In the matter of DONCO EQUIPMENT, INC., Debtor.

Daniel J. FLANIGAN, trustee in bankruptcy, Plaintiff,

v.

KELLY BROTHERS ASPHALT WORKS, INC., Defendant.[1]

Bankruptcy No. 81–03293–3.
Adv. No. 82–0171–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 23, 1982.
As Amended Oct. 19, 1982.

---

1. Other defendants were initially named by the plaintiff in their capacities of the "statutory trustees" of the defendant Kelly Brothers Asphalt Works, Inc. But, at the inception of the trial, counsel for the plaintiff admitted in open court that the corporate charter of the defendant Kelly Brothers Asphalt Works, Inc., was still in effect and that judgment as to the "statutory trustees" was therefore not necessary or proper.

Arthur B. Federman, Kansas City, Mo., for plaintiff.

Karon D. Ramsey, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SUM OF $1,265.87 FROM THE DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff, on February 5, 1982, removed to this court, under the provisions of section 1478(a), Title 28, United States Code, an action which had been filed by the debtor against the defendant in a state court. The state court petition sought damages in the form of the amounts of rentals of certain tractors which allegedly had been made by the defendant and not paid for. Damages were also sought for alleged "loss or damage" to the equipment rented in the sum of $15,983.60.

After the completion of pretrial procedures in the bankruptcy court, a trial of the merits was conducted in the bankruptcy court. At the conclusion of that trial, the court rendered oral findings of fact, conclusions of law, and final judgment on the issue of liability. That final judgment was to the effect that there was no liability for any rental payments due in view of the uncontradicted evidence of payment. With respect to liability for any damages for loss or injury to the equipment, it was noted by the court that the contractual provision which governed this matter pertinently provided as follows: "Lessee shall be responsible for loss or damage to equipment arising from any cause whatsoever ... Lessee shall not be liable for normal wear and tear." Therefore, it was determined by the court that damage for which the lessee would be liable should preclude wear and tear which would be consonant with the heavy use to which to tractors had been put—that of cutting high and heavy weeds along roadways—and therefore should include only comparatively serious defects worked to the structures of the tractors. The findings of the court, and its conclusions, were then made in greater detail and a transcript thereof should serve as the findings and conclusions as required by Rule 752 of the Rules of Bankruptcy Proce-

dure in the event of any appeal or other review.

In accordance with those findings on the issue of liability, the court instructed that the order of proof could be refined and quickened if the plaintiff would present a written summary of his factual contentions as to which of the claimed damages were of such serious nature that they could not have come under the description of "normal wear and tear" within the meaning of the governing contractual provision.

In response to the court's order to this effect, the plaintiff filed his summary on July 13, 1982, claiming the following as damages which would come within the rule asseverated by the court at the conclusion of the initial hearing:

(1) Installation of a great number of parts to rebuild a vehicle which was so seriously damaged that it was required to be rebuilt ........................ $2,385.18.[2]
(2) Installation of a great number of parts to rebuild a second vehicle similarly damaged to the extent that it had to be rebuilt to restore it to running condition ......$2,606.43.[3]

By means of the same order, issued at the conclusion of the hearing of this action, the court granted the defendant an opportunity to respond to the summary. The documents and other evidence which underlay the summary of the plaintiff was available to the defendant by reason of having been adduced in evidence during the hearing and being at all reasonable times thereafter available to inspect and copy by counsel for the defendant.

The defendant, in responding to the post-trial summary of the evidence, raises a multitude of legal issues, none of which have any merit.[4] In respect of the post-trial summary itself, the defendant contends, for the following reasons, that the evidence does not warrant a verdict for the sums sought by the plaintiff as those attributable to damage rather than "normal wear and tear."

In this regard, it is first contended by the defendant that:

"Plaintiff has failed to demonstrate with reasonable certainty that the damages set forth in its 'Summary of Evidence at Trial' resulted from a cause for which defendant was liable—damage, rather than 'wear and tear'—for which defendant was not liable. A review of the trial record reflects that no demonstration was even proffered as to the specific items now appearing as plaintiff's summaries."

The governing contractual provision, however, does not bring the element of causation into issue. As noted above, by virtue of the terms of the contract, the defendant undertook to "be responsible for loss or damage to equipment arising from *any cause whatsoever* ..." (Emphasis added.) The evidence adduced in the trial of this action satisfactorily shows that the two vehicles which had to be rebuilt were not in any condition approaching their current condition when they were rented by the defendant. And the extensiveness and costliness of the repairs necessitated after their return to the plaintiff warrants a finding that they were "damages" as opposed to "normal wear and tear" within the meaning of the contractual language.

It is next asserted that there is no basis on which the court may make any determination that these repairs should be compensated under the contract; that "the claim being in bulk, and there being no sufficient data for apportioning the claim

---

2. The parts are specifically enumerated in the summary and the summary, in turn, refers to "trial exhibit # 11F" as the basic document.

3. The parts are specifically enumerated in the summary and the summary, in turn, refers to "trial exhibit 11D" as the basic document.

4. The defendant complains that the removal did not take place in the time limits set out in the interim rules of bankruptcy procedure. But, in many instances, those time limits have been held to be directory rather than mandatory and therefore not to affect the validity of a late removal. The jurisdictional objections are misplaced in view of the fact that the holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), does not take effect until October 4, 1982, and matters in the meantime litigated in the bankruptcy courts are preserved from the constitutional objection.

between the part that plaintiff was entitled to and the part that he was not, there could be no recovery of such damages." *Snoqualmi Realty Co. v. Moynihan,* 179 Mo. 629, 78 S.W. 1014 (1904). In this action, however, as noted above, the court has determined that "damages" must be differentiated from "normal wear and tear" by eliminating all except the most serious structural defects and this appears to be the intent of the contracting parties in generally differentiating between the two categories of loss or expense in the controlling contract. The court does agree, however, that in totally rebuilding a tractor, some allowance must be made as to the parts which would have had to be replaced because they were attributable to "normal wear and tear." In this regard, the court must find that most of the replaceable parts must ordinarily be regarded as subject to replacement as the result of "normal wear and tear." Accordingly, an allowance must be made for these against the damage award sought by the plaintiff. The "damages" award must largely be limited to the structural defects caused by or during the defendant's use and possession of the tractors. In evaluating the evidence according to this principle, the damage award must be reduced from the total of $4,991.61 sought by the plaintiff to the sum of $1,265.87.[5]

■ The defendant next complains that the sponsor of certain of the exhibits admitted in evidence as business records had no personal knowledge of their contents. But the admission in evidence of records of a regular activity does not depend upon the personal knowledge of the testimonial sponsor as to the facts contained therein. And the present contentions in this regard do not impeach the admissibility of the exhibits nor their probative value.

■ It is also asserted by the defendant that "(t)here was no evidence presented by plaintiff at trial that the amounts for repair now set forth in the summary were reasonable." Sufficient evidence of the value of the various parts replaced, labor involved and other matters germane to this issue was adduced, however, to permit the court to infer from the facts the amount of a reasonable award. When the damage has been great to two tractors and when it has, according to the uncontradicted evidence, necessitated their virtual rebuilding, the evidence fully supports an award of $1,265.87 for damage from "any cause whatsoever."

■ It is also submitted by the defendant that, in order sufficiently to prove the cost of parts which were installed, it is necessary to produce the original invoice which evidenced the cost of those parts. But cost is a matter other than one as to which the contents of a document are in issue. Cost is

---

5. The posttrial summaries submitted by the plaintiff were imperfect at least to the extent that they did not contain the values of the respective parts which were asserted to be installed to replace "damaged" parts. Further, in examining the underlying exhibits—the "internal repair orders" which the plaintiff offered in evidence—the court has found virtually all the entries illegible as to the price which is to be attributed to each part. Further, the plaintiff's contentions as to the repairs and substituted parts which must be regarded as attributable to "damage," within the meaning of the governing contract, are far too broad. The court has therefore had to sift through the exhibits to determine which of the parts (for which prices can be legibly ascertained from the exhibits) can be regarded of such material nature that the necessity to replace them can be said to have arisen from "damage." In so doing, the following parts must be regarded as having to be replaced due to "damage" and the following

are the uncontradicted prices or costs of replacement:

| | |
|---|---|
| Steering wheel | $35.21 |
| Shaft and steering column housing | 33.83 |
| Hood | 256.64 |
| Axle bracket | 292.13 |
| PTO shaft | 98.83 |
| fender | 259.37 |
| fender | 259.37 |
| muffler | 30.49 |
| Total | $1,265.87 |

It is readily recognizable that parts of the above category do not have normally to be replaced except for loss or damage. They do not have to be replaced ordinarily for "normal wear and tear." The plaintiff must be regarded, therefore, as making a sufficient showing with regard to these parts to support a judgment. Otherwise, however, the record is wholly insufficient.

a fact independent of the document and which may be evidenced other than by any memorandum of it. The evidence is sufficient, without the original invoices, to warrant the court in making relevant findings in this regard.

The defendant states that the court should accept the testimony of Jimmie Jones, a mechanic with extensive "experience in the maintenance, repair and even rebuilding of heavy duty equipment" in making its determination of damages. It was the substance of Mr. Jones' testimony that rebuilding should not entail making all the installations of parts which are claimed to be necessary by the plaintiff. The court, in reducing the sought award so as to eliminate parts which might have been attributable to "normal wear and tear," has given full consideration to Mr. Jones' testimony although it has not, and need not be, completely bound by it.

■ The evidence which has been submitted by the plaintiff on the issue of damages, it is further said, is so indefinite as not "to enable the trier of fact to make a reasonable determination without speculation and conjecture." "In fact," it is said, "the Court commented on this state of the evidence and the Court's inability to determine the amount of damages at the conclusion of the trial and assumedly this was the reason for the Court's request for after-trial summarization of the evidence." This is the most serious of the objections raised by the defendant and the failure of the plaintiff to comply with the court's pretrial order directing the exchange of summaries and his election instead to introduce individual bills and exhibits at trial in a manner which did not render them readily intelligible in terms of the governing contractual provisions was lamentable. But the evidence plainly shows—and without contradiction, as mentioned above—that two of the tractors were damaged to the extent that they had to be rebuilt. The total rebuilding cost nearly $5,000.00. In eliminating every conceivable expense for "normal wear and tear," the court has come to the conclusion that $1,265.87 is supported by the evidence. Reason and common sense would dictate that the expense of repairing and rebuilding extensive damage to these two tractors was no less than that.

The defendant contends that the posttrial summarization of the evidence "usurp(s) the function of the trial (and) permit(s) introduction of new evidence not of record." The posttrial summary, however, has clearly been considered only insofar as it refers to evidence adduced at trial.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff have and recover the sum of $1,265.87 from the defendant.